1  ROBERT J. ROSATI #112006
   robert@erisalg.com
2  ERISA Law Group, LLP
   6485 N. Palm Ave., Ste. 105
3  Telephone:(559)478-4119
   Telefax:(559)478-5939
4

5  Attorney for Plaintiff,
   CHRISTIE LOPEZ
6

7              UNITED STATES DISTRICT COURT FOR

8                CENTRAL DISTRICT OF CALIFORNIA

9                     SOUTHERN DIVISION

10  CHRISTIE LOPEZ                    Case No.: 8:16-cv-1927

11              Plaintiff,
                                      COMPLAINT
12  v.

13  LIFE INSURANCE COMPANY OF
    NORTH AMERICA,
14
                Defendant.
15

16  _____

17     Plaintiff CHRISTIE LOPEZ ("Plaintiff" or "Lopez") alleges as follows:

18                        **JURISDICTION**

19     1.    Plaintiff's claim for relief arises under the Employee Retirement

20  Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. section

21  1132(a)(1).  Pursuant to 29 U.S.C. section 1331, this court has jurisdiction over

22  this action because this action arises under the laws of the United States of

23  America.  29 U.S.C. section 1132(e)(1) provides for federal district court

24  jurisdiction of this action.

25                          **VENUE**

26     2.    Venue is proper in the Central District of California because the acts

27  and occurrences giving rise to Plaintiff's claim for relief took place in Irvine,

28  Orange County, California, because Plaintiff was and is a resident of Irvine,

COMPLAINT

-1-

1  Orange County, when Defendant terminated her claim for long-term disability

2  benefits and denied her appeal of that denial.  Therefore, 29 U.S.C. section

3  1132(e)(2) provides for venue in this court.  Intradistrict venue is proper in the

4  Southern Division of this Court.

5  **PARTIES**

6  3.  Plaintiff  is, and at all times relevant hereto was, a participant, as that

7  term is defined by 29 U.S.C. section 1000(7), of the Western Digital Corporation

8  Group Long Term Disability Plan ("The Plan") and thereby entitled to receive

9  benefits therefrom.  Plaintiff was a beneficiary because she was an employee of

10  Western Digital Corporation, which established The Plan.

11  4.  The Plan is an employee welfare benefit plan organized and operating

12  under the provisions of ERISA, 29 U.S.C. section 1001 et seq.

13  5.  Defendant Life Insurance Company of North America, ("LINA"),

14  issued Policy No. FLK0960065 to The Trustee of the Group Insurance Trust for

15  Employers in The Manufacturing Industry ("The Policy") under which benefits are

16  provided by The Plan, was insurer and decision maker for The Plan, and is legally

17  liable for paying the benefits sought herein.  Lopez's employer, Western Digital

18  Technologies, was a subscriber and thereby obtained benefits for its employees,

19  including Lopez.

20  **CLAIM FOR RELIEF**

21  6.  The Policy provides long-term disability ("LTD") benefits, which, for

22  a person under the age of 62 at the time the disability occurred, as was Plaintiff

23  herein, such benefits potentially could continue until the claimant reaches age 65.

24  7.  In order to be eligible for benefits under the Policy, an employee must

25  meet the Policy's definition of disability.

26  8.  The Policy defines "disability" as follows:

27  "The Employee is considered Disabled if, solely because of Injury or

28  Sickness, he or she is:

**COMPLAINT**

-2-

1          1.    unable to perform the material duties of his or her

2    Regular Occupation; and

3          2.    unable to earn 80% or more of his or her Indexed

4    Earnings from working in his or her Regular Occupation.

5        After Disability Benefits have been payable for 24 months, the

6    Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:

7          1.    unable to perform the material duties of any occupation

8    for which he or she is, or may reasonably become qualified based on

9    education, training or experience; and

10          2.    unable to earn 60% or more of his or her Indexed

11    Earnings."

12    9.    Regular occupation is defined in The Policy as:

13    "The occupation the Employee routinely performs at the

14    time the Disability begins.  In evaluating the Disability, the

15    Insurance Company will consider the duties of the

16    occupation as it is normally performed in the national

17    economy.  It is not work tasks that are performed for a

18    specific employer or at a specific location."

19    10.    Lopez  was formerly employed by Western Digital Corporation for

20    two years as a Senior Engineering Change Manager.  Her last day of work was

21    February 12, 2010.

22    11.    Lopez is disabled by fibromyalgia, chronic fatigue syndrome,

23    myofascial pain, cervical degenerative disc disease, insomnia, osteoarthritis, and

24    other conditions, in combination with each other, and by the side effects of her

25    medications.  Her condition has not materially changed in years.

26    12.    By letter dated July 16, 2010, LINA acknowledged receipt of  Lopez'

27    claim for LTD benefits.  By letter dated September 27, 2010, LINA intially denied

28    Lopez' claim for benefits.  Lopez appealed that decision.

**COMPLAINT**

13. By notice dated September 26, 2010, the Social Security Administration awarded Lopez Social Security Disability Insurance benefits beginning August , 2010

14. By letter dated June 16, 2011, LINA notified Lopez that it had reconsidered its decision and would pay LTD benefits beginning May 15, 2010.

15. On or about April 14, 2015, Lopez' benefits were selected for termination by LINA's Linda Galloway and thereafter actions were taken by LINA to create a justification for that decision.

16. By letter dated October 28, 2015, LINA again terminated Lopez' benefits, but invited her to submit an appeal.

17. By letter dated April 4, 2016, through counsel, Lopez submitted an appeal of the termination of her LTD benefits consisting of a 99-page appeal letter from Lopez's attorney, Lopez' sworn declaration, medical records, and various other documents. The appeal letter explained that:

        A. LINA failed to follow California insurance law;

        B. LINA ignored Lopez's functional limitations;

        C. LINA disregarded Lopez's history of medical treatment and the opinions of her doctors;

        D. LINA failed to have Lopez examined by a physician;

        E. LINA failed to reasonably consider fatigue and pain as a disabling conditions;

        F. LINA failed to consider Lopez's co-morbid conditions in conjunction with each other;

        G. LINA failed to perform a proper Transferrable Skills Analysis;

        H. LINA failed to properly consider the multiple side effects of the medications Lopez takes and the effects those medications have on her and her ability to function;

        I. Lopez was awarded Social Security Disability benefits by the

1   Social Security Administration, which fact LINA failed to properly consider;

2            J.      Lopez' claim for benefits was designated for termination when

3   it was assigned to Linda Galloway's team, which thereafter created a rationale for

4   the purpose of terminating Lopez' benefits;

5            K.      LINA intentionally withheld documents;

6            L.      LINA's review processes are unfair;

7            M.      Lopez was and is totally disabled under the terms of the Policy

8   and therefore entitled to continued benefits; and

9            N.      Other reasons set forth in the appeal letter.

10       18.    After a substantial delay, LINA sent Lopez for an "Independent

11  Medical Evaluation" on August 16, 2016, by Dr. Kamran Hakimian.  In his report

12  Dr. Hakimian opined, in part, that Lopez "should be able to perform sedentary

13  occupation providing 10 minutes rest for stretching and repositioning for every

14  hour of work.  She should be precluded from lifting greater than 10 pounds.  She

15  is able to walk short distances and stand for 20 minutes at a time. . . ."

16       19.    LINA obtained a September 9, 2016, Transferable Skills Analysis

17  from Cindy A. Herzog.  Herzog's TSA does not mention or consider that Lopez

18  has been awarded SSDI benefits and had not worked in six years and identified

19  occupations as within Lopez's capacity which Lopez cannot perform and is

20  unqualified to perform.

21       20.    By letter dated September 13, 2016, LINA denied Lopez' appeal.

22       21.    Plaintiff has exhausted all administrative remedies required to be

23  exhausted by the terms of The Policy and by ERISA.

24       22.    At all times mentioned herein Plaintiff was, and continues to be,

25  totally disabled under The Policy's definition of totally disabled and therefore

26  entitled to benefits under the terms of The Policy.

27       23.    Defendant was required to provide Plaintiff a full and fair review of

28  her claim for benefits pursuant to 29 U.S.C.  §1133 and its implementing

**COMPLAINT**

Regulations.  Specifically:

A.   29 U.S.C. §1133 mandates that, in accordance with the Regulations of the Secretary of Labor, every employee benefit plan, including defendants herein, shall provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant and afforded a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by an appropriate named fiduciary of the decision denying the claim.

B.   The Secretary of Labor has adopted Regulations to implement the requirements of 29 U.S.C. §1133.  These Regulations are set forth in 29 C.F.R. §2560.503-1 and provide, as relevant here, that employee benefit plans, including Defendant, shall establish and maintain reasonable procedures governing the filing of benefit claims, notifications of benefit determinations, and appeal of adverse benefit determinations and that such procedures shall be deemed reasonable only if:

i.   Such procedures comply with the specifications of the Regulations.

ii.   The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, The Policy provisions have been applied consistently with respect to similarly situated claimants.

iii.   Written notice is given regarding an adverse determination (i.e., denial or termination of benefits) which includes: the specific reason or reasons for the adverse determination; with reference to the specific plan

provisions on which the determination is based; a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; a description of The Policy's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following a denial on review; if an internal rule, guideline, protocol, or similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

iv.    LINA is required to provide a full and fair review of any adverse determination which includes:

     a.    That a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

     b.    A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information: (1) was relied upon in making the benefit determination;

1    (2) was submitted, considered, or generated in the

2    course of making the benefit determination,

3    without regard to whether such document, record,

4    or other information was relied upon in making the

5    benefit determination; (3) demonstrates

6    compliance with the administrative processes and

7    safeguards required pursuant to the Regulations in

8    making the benefit determination; or (4)

9    constitutes a statement of policy or guidance with

10   respect to The Policy concerning the denied

11   benefit without regard to whether such statement

12   was relied upon in making the benefit

13   determination.

14   c.   The Regulations further provide that for a review

15        that takes into account all comments, documents,

16        records and other information submitted by the

17        claimant relating to the claim, without regard to

18        whether such information was submitted or

19        considered in the initial benefit determination;

20   d.   The Regulations further provide that, in deciding

21        an appeal of any adverse determination that is

22        based in whole or in part on a medical judgment

23        that the appropriate named fiduciary shall consult

24        with a healthcare professional who has appropriate

25        training and experience in the field of medicine

26        involved in the medical judgment.

27   e.   The Regulations further require a review that does

28        not afford deference to the initial adverse benefit

**COMPLAINT**

determination and that is conducted by an appropriate named fiduciary of the Plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal nor the subordinate of such individual.

        f.    The Regulations further provide that a healthcare professional engaged for the purposes of a consultation for an appeal of an adverse determination shall be an individual who is neither the individual who was consulted in connection adverse benefit determination which was the subject of the appeal nor the subordinate of any such individual.

24.    Defendant denied Plaintiff a full and fair review of her claim for benefits as follows:

      A.    LINA does not have claims procedures which contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, The Policy provisions have been applied consistently with respect to similarly situated claimants, or failed to provide them to Lopez when he, through counsel, demanded them.

      B.    LINA, when denying Plaintiff's claim for LTD benefits did not provide a description of the additional material or information necessary for Plaintiff to perfect her claim or an explanation of why such material or information was necessary.

      C.    Defendant failed and refused to provide all relevant documents to Plaintiff for use in her appeals.  Specifically, despite Plaintiff's written request for all relevant records submitted prior to the submission of her appeal, LINA

withheld relevant records, including, but not limited to:

          i.      Claims procedures as specified in Paragraph 23;

          ii.     Statements of policy or guidance with respect to The Policy concerning the denied benefit without regard to whether or not the statement was relied upon in making the benefit determination, as specified in Paragraph 19.

    D.    Defendant did not consider the comments and documents submitted in support of Plaintiff's appeals.

    E.    Defendant otherwise violated the Regulations.

25.    This Court is required to review the termination of Plaintiff's benefits de novo because:

    A.    The Policy does not reserve discretion.

    B.    Any discretionary clause in The Policy or plan is void and unenforceable due to California Insurance Code section 10100.6 because The Policy:

          i.      provides life insurance or disability insurance coverage, to any California resident;

          iii.    was to be renewed–i.e., continued in force – after The Policy's anniversary date,

          iv.    which was after the effective date of Insurance Code section 10110.6.

    C.    LINA did not comply with Department of Labor regulations governing claims procedures, 29 C.F.R. § 2560.503-1, as more dully described in Paragraphs 19 and 20, above, and therefore its otherwise discretionary denial of Lopez's claim for benefits is not entitled to deference because LINA and The Plan have not established procedures in full conformity with 29 C.F.R. § 2560.503-1 and their failure to comply with its requirements was neither inadvertent nor harmless.

**COMPLAINT**

1    26.    Alternatively, if for any reason the Court concludes that review is for

2  abuse of discretion, then this Court should review Defendant's decision with

3  limited deference because:

4          A.    LINA is both the administrator and the funding source for The

5  Policy, and therefore has a conflict of interest.

6          B.    LINA failed to comply with ERISA's procedural requirements

7  regarding benefit claims procedures and full and fair review of benefit claim

8  denials as set forth in Paragraph 19;

9          C.    LINA utilized medical experts to review Plaintiff's medical

10  records who had a financial conflict of interest, and therefore did not provide a

11  neutral, independent review process.

12          D.    LINA refused to consider all evidence presented by Plaintiff in

13  the course of her appeal.

14          E.    LINA's decision-making was influenced by its financial

15  conflict of interest.

16          G.    Defendant relied upon a factually unsubstantiated medical

17  reviews that were provided by LINA's hired physicians.

18    27.    Defendant is judicially estopped to argue that Plaintiff is not totally

19  disabled under the terms of The Policy because:

20          A.    The Policy specifies that monthly LTD benefits will be reduced

21  by other  income benefits, including SSA benefits.  LINA required Lopez to apply

22  for SSDI benefits.

23          B.    LINA reduced Lopez's LTD benefits due to her receipt of SSDI

24  benefits.

25          C.    Lopez was awarded SSDI benefits after arguing and

26  establishing that she was incapable of performing her own or any job in the

27  national economy and therefore was entitled to SSDI benefits.

28          D.    The Social Security Administration necessarily determined that

**COMPLAINT**

Lopez was incapable of performing not only her own occupation but any occupation in the national economy.  Under the Social Security Act, a person qualifies as disabled and thereby eligible for benefits only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her pervious work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).  Disability under the Social Security Act means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months . . ."  42 U.S.C. § 423(d)(1)(A).

E.     LINA was in privity with Plaintiff in the SSA proceedings and therefore, with LINA, asserted therein that Lopez could not perform her own occupation or any occupation in the national economy, considering her age, education, and work experience and prevailed on those arguments.

F.     By virtue of these facts Lopez acted in a trustee-like capacity for LINA in obtaining the proportion of her SSDI awards which reduces her LTD benefits; LINA and Plaintiff successfully argued to the SSA that she was incapable of performing any occupation in the national economy.

G.     LINA is therefore judicially estopped to make the opposite argument in this action; that is, to argue that given her age, education and experience Lopez is capable of performing any occupation.

28.     Defendant's termination of Plaintiff's LTD  benefits was arbitrary and capricious, an abuse of discretion, and a violation of the terms of The Policy.

29.     An actual controversy has arisen and now exists between Plaintiff and Defendant with respect to whether Plaintiff is entitled to LTD benefits under The Policy.

30.     Plaintiff contends, and Defendants disputes, that Plaintiff is entitled

COMPLAINT

to LTD benefits under the terms of The Policy because Plaintiff contends, and Defendant disputes, that Plaintiff is totally disabled.

31.   Plaintiff desires a judicial determination of her rights and a declaration as to which party's contention is correct, together with a declaration that Defendant is obligated to pay long-term disability benefits under the terms of The Policy, retroactive to the first day her benefits were terminated, until and unless such time that Plaintiff is no longer eligible for such benefits under the terms of The Policy.

32.   A judicial determination of these issues is necessary and appropriate at this time under the circumstances described herein in order that the parties may ascertain their respective rights and duties, avoid a multiplicity of actions between the parties and their privities, and promote judicial efficiency.

33.   As a proximate result of Defendant's wrongful conduct as alleged herein, Plaintiff was required to obtain the services of counsel to obtain the benefits to which she is entitled under the terms of The Policy.  Pursuant to 29 U.S.C. section 1132(g)(1), Plaintiff requests an award of attorney's fees and expenses as compensation for costs and legal fees incurred to pursue Plaintiff's rights.

WHEREFORE, Plaintiff prays judgment as follows:

1.   For declaratory judgment against Defendant, requiring Defendant to pay long-term disability benefits under the terms of The Policy to Plaintiff for the period to which she is entitled to such benefits, with prejudgment interest on all unpaid benefits, until Plaintiff attains the age of 65 years or until it is determined that Plaintiff is no longer eligible for benefits under the terms of the Policy.

2.   For attorney's fees pursuant to statute against Defendant.

3.   For costs of suit incurred.

4.   For such other and further relief as the Court deems just and proper.

**COMPLAINT**

1 | DATED: October 21, 2016                    ERISA LAW GROUP, LLP

2

3                                              /s/ Robert J. Rosati
                                               ROBERT J. ROSATI
4                                              Attorney for Plaintiff,
                                               CHRISTIE LOPEZ

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**